John DOE, Anti–Terrorism
Officer, Plaintiff,

v.

The CITY OF NEW YORK and
Bruce Tefft, Defendants.

No. 06–CV–13738(BSJ).

United States District Court,
S.D. New York.

Feb. 6, 2008.

Ilann M. Maazel, Katherine R. Rosenfeld, Emery Celli Brinckerhoff & Abady, LLP, New York, NY, for Plaintiff/Defendants.

Lawrence John Profeta, New York City Office Of Corporation Counsel, Jerry Stephen Goldman, Anderson Kill & Olick, P.C., New York, NY, Meghan Katherine Finnerty, William Herbert Pillsbury, Anderson Kill & Olick, P.C., Philadelphia, PA, for Defendants.

### Order

BARBARA S. JONES, District Judge.

In a complaint dated December 5, 2006 (the "Complaint"), Plaintiff John Doe Anti–Terrorism Officer ("Plaintiff"), alleges that he was the victim of a hostile work environment created by Defendants the City of New York and Bruce Tefft ("Tefft"). Specifically, Plaintiff, an Arab–American, alleges that he was forced to read almost daily emails sent by Tefft, a counterterrorism adviser hired by the New York City Police Department ("NYPD"), that contained racially and religiously discriminatory content targeted at Arabs and Muslims. Tefft filed a motion to dismiss on February 14, 2007 that is currently before the Court.[1] For the reasons outlined herein, the motion is DENIED.

---

1. By letter dated April 5, 2007, Plaintiff requested that the Court strike Section I ("Plaintiff's 42 U.S.C. § 1981 Claim is Governed by the Same Law as his Title VII Claim and Both Claims Should Be Dismissed") and Section II.B ("Plaintiff Fails to Allege Any Adverse Employment Action Except the City's Failure to Muzzle Tefft") of Tefft's Reply

## Background[2]

Plaintiff has been a law enforcement officer for the City of New York since 1996 and is a Captain in the Department of Corrections. He is an Arab–American and a Muslim. Since 1998, Plaintiff has been assigned to the NYPD's Intelligence Division, under the auspices of the Federal High Intensity Drug Trafficking Areas ("HIDTA") Program. Beginning in early 2002, Plaintiff helped to launch the "Cyber Unit" of the NYPD's Intelligence Division, where he has worked to identify terrorist threats to New York City. Plaintiff alleges that Tefft, an employee of a contractor hired by the City of New York in 2002 to serve as a counterterrorism advisor, sent him, his colleagues in the Intelligence Division, and his supervisors in the NYPD, discriminatory anti-Muslim and anti-Arab email briefings from the summer of 2002 until December 2005.

These email briefings stated that Muslims and Arab Americans were untrustworthy and could not reliably serve in law enforcement positions or handle sensitive data. For example, Tefft sent emails stating that "a good Muslim ... can't be a good American"; "[w]ithout Islam, there wouldn't be any Islamic Terror"; and, "[b]urning the hate-filled Koran should be viewed as a public service at the least." Tefft also attached his own comments to articles he forwarded. Attached to an article entitled "Al–Qaeda Wants to Repeat 9/11 in Israel," he commented: "Makes one wonder how many Muslim pilots the U.S. National Guard, Reserves, and/or U.S. Air Force have flying around U.S. Cities." In another article entitled "Has U.S. Threatened to Vaporize Mecca?" he added, "Excellent idea, if true."

Plaintiff was ordered to receive Tefft's email briefings as part of his duties at the NYPD. In addition to the emails, Tefft directly stated to Plaintiff's colleagues that they should not trust Plaintiff or any other Muslim in law enforcement because "Muslims have no place in law enforcement." Ultimately, Plaintiff could not tolerate what he felt was harassing conduct that interfered with his work. In the Summer of 2003, he attempted to directly inform Tefft that his emails were degrading and offensive. Tefft ignored Plaintiff's complaints and continued to send him emails on a daily basis.

Later in the summer of 2003, Plaintiff reported the harassment to his supervisor who was an undercover officer. The supervisor did nothing in response to Plaintiff's complaint. Plaintiff then reported the harassment to three other supervisors, none of whom stopped the alleged harassment. Tefft and other NYPD employees continued to harass Plaintiff well into 2005. One high-ranking Lieutenant stated, "All Arabs are animals." Other officers made comments stating that Muslims should be driving hotdog carts, not working in law enforcement.

On February 16, 2006, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race, religion, and national origin discrimination and retaliation against defendant City of New York. On September 28, 2006, the EEOC issued a Notice of Right to Sue, and Plaintiff filed suit in the Southern District of

Brief, arguing that these specific arguments were first raised in the Reply. The Court denied Plaintiff's request, but did grant leave to Plaintiff to file a sur-reply addressing the arguments presented in the above-referenced Sections.

2. This factual summary is drawn from the Complaint, the factual allegations of which are accepted as true for the purpose of deciding this motion.

New York on December 5, 2006, claiming that the City of New York violated his rights under Title VII, and that both the City of New York and Tefft violated his rights under 42 U.S.C. § 1981. Plaintiff also sued both Tefft and the City of New York under New York Executive Law section 290 and New York City Administrative Code section 8–101.

Tefft has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). He asserts five grounds for dismissing Plaintiff's claims: (1) the court lacks personal jurisdiction over him; (2) the First Amendment bars the employment discrimination claims brought against him; (3) Plaintiff's claims against him are barred by the Communications Decency Act; (4) Plaintiff fails to state a claim under state and federal employment discrimination laws because neither the state nor federal provisions allow suits against individuals; and (5) he is a federal employee under the Federal Tort Claims Act and, therefore, the United States is the proper defendant in this case. The Court has examined each of these arguments, and, for the reasons set forth below, Defendant's motion to dismiss is DENIED.

## Discussion

### I. Personal Jurisdiction.

Tefft argues that the Court lacks personal jurisdiction over him. To establish personal jurisdiction, this Court must apply the law of New York, the state in which it sits. *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997). In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving that this Court has jurisdiction over the defendant. *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir.2005) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784

(2d Cir.2005)). To meet this burden, a plaintiff need only make a prima facie showing of personal jurisdiction, and the Court need not resort to a "full blown evidentiary hearing." *Id.* Courts construe the pleadings and affidavits in a light most favorable to the plaintiff, resolving all doubts in his favor. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

■ Under New York's long-arm statute, the Court has personal jurisdiction over a non-domiciliary if the defendant transacts business or commits a tortious act within the state. N.Y. C.P.L.R. § 302(a) (McKinney 2001). The plaintiff need only point to a single act to satisfy the statute, but must demonstrate that there is a sufficient nexus between the defendant's contacts and the plaintiff's cause of action. *Davis v. United States*, No. 03 Civ. 1800, 2004 WL 324880, at *5 (S.D.N.Y. Feb. 19, 2004).

■ In this case, the Court has personal jurisdiction over Tefft. The plaintiff's cause of action under 42 U.S.C. § 1981 is properly understood as a tort and fits squarely within the ambit of the 302(a) single-act provision. *See id.* at *5 (asserting personal jurisdiction in section 1983 case); *Rios v. Marshall*, 530 F.Supp. 351, 367 (S.D.N.Y.1981) (holding that alleged violations of Constitutional rights are tortious acts for the purpose of personal jurisdiction). Plaintiff has alleged sufficient contacts to make a prima facie case establishing that Tefft transacted business within the state. Tefft admits that he "traveled to New York, for business reasons," Tefft Decl. ¶ 5, and "commuted frequently to NYC" to perform "consulting services as a counter-terrorism and intelligence adviser to the NYPD Intelligence Division," *id.* ¶ 19. Further, Plaintiff alleges that much of the tortious conduct occurred while Tefft worked in New York City.

Specifically, Plaintiff alleges that Tefft worked in the same New York office as he did, in the same building and on the same floor, just a few cubicles away. Pl.'s Amended Decl. ¶ 2. Plaintiff notes that Tefft sent many of the offending emails while at his desk in that New York City office. *Id.* ¶ 4. These contacts are plainly sufficient to establish jurisdiction over Tefft because Plaintiff's claims arise from Tefft's contacts with the NYPD, emails he sent while doing work for the NYPD in NYPD offices in New York City, and the solicitation of his email briefings to New York City law enforcement officers. Tefft's 12(b)(2) motion to dismiss for lack of personal jurisdiction is therefore DENIED.

## II. Motion to Dismiss: Legal Standard

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). A motion to dismiss may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Weisman v. LeLandais,* 532 F.2d 308, 311 (2d Cir.1976) (quoting *Scheuer v. Rhodes,*

416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

## III. Discussion

### i. The First Amendment

■ Tefft contends that his emails were protected speech under the First Amendment. Specifically, he argues that the emails were a form of political speech and that he cannot be held liable for their content under Section 1981 or its state analogs. However, any restraints on speech stemming from these anti-discrimination provisions are merely incidental to the statutes' objective of remedying racial discrimination. As the Supreme Court has noted, "[w]here the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy." *R.A.V. v. St. Paul Minnesota,* 505 U.S. 377, 389, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).[3] The Supreme Court has found that sufficiently severe or pervasive harassment on the basis of a prohibited category, including religion, race, or national origin, constitutes "employment discrimination" and is therefore actionable under federal law. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ("[T]he very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends [the] broad rule of

---

**3.** Further, other courts have rejected an interpretation of the First Amendment that would serve as an absolute bar to discrimination claims. *Jenson v. Eveleth Taconite Co.,* 824 F.Supp. 847, 884 n. 89 (D.Minn.1993) ("Title VII may legitimately proscribe conduct, including undirected expressions of gender in-

tolerance, which create an offensive working environment. That expression is 'swept up' in this proscription does not violate First Amendment principles."); *Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486 (M.D.Fla.1991).

workplace equality."). Accordingly, the First Amendment does not preclude Plaintiff's discrimination claims.

### ii. The Communications Decency Act

██ Tefft also argues that the hostile work environment claims are barred under 47 U.S.C. § 230 (2006), a part of the Communications Decency Act ("CDA") that provides immunity for interactive computer service providers. The statute states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Id.* § 230(c)(1). However, Tefft's attempt to seek shelter under this statute for the emails he sent as an individual is misguided. The CDA provision he cites was intended to protect interactive computer service providers and websites that host third-party content on their servers or sites. *See Blumenthal v. Drudge,* 992 F.Supp. 44, 49–53 (D.D.C.1998). Tefft's argument that his emails were akin to a blog, website, or listserv because he forwarded third-party content that he found relevant or interesting also fails. When Tefft attached his own commentary to his listserv, he ceased to be a passive host of third-party information. *See id.* at 50 ("Section 230(c)(1) would not immunize [defendants] with respect to any information [they] developed or created entirely by [themselves]."). For example, the plaintiff alleges that Tefft forwarded an article entitled "Is the Arabic Language 'Perfect' or 'Backwards'?" With it, Tefft added: "the language may not be backwards but the people speaking it are." Compl. ¶ 53(*l* ). When Tefft added his own allegedly tortious speech to the third-party content he forwarded, he fell out of the statute's protections. *See id.*

Tefft's argument also fails because the statute is clearly not meant to immunize

his conduct from liability. The portion of the statute that includes "users[s] of interactive computer services" cannot be interpreted to apply to Tefft's conduct. Doing so would exempt virtually all Internet use from liability, expanding the statute's reach beyond that which Congress intended. *See Zeran v. America Online, Inc.,* 129 F.3d 327, 330–31 (4th Cir.1997)(noting that Congress intended the statute to confer immunity on service providers that act as publishers and host third-party content, while maintaining the ability "to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer"). Thus, the CDA does not compel this Court to dismiss Plaintiff's claims.

### iii. Section 1981 Claims

██ Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment. 42 U.S.C. § 1981 (2006); *see Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1189 (2d Cir.1987). To state a hostile work environment claim, a plaintiff must allege that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000). A plaintiff must allege either that one "single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* at 570.

██ Tefft argues that individuals cannot be held liable under section 1981. The Second Circuit has, however, explicitly held that this is not the case and that individual liability is permissible. *Whidbee v. Garzarelli Food Specialties, Inc.,* 223

F.3d 62, 75 (2d Cir.2000) ("We now explicitly hold what was implicit in our previous cases: individuals may be held liable under § 1981."). Tefft further argues that he cannot be held liable because he was not an employer or supervisor within the meaning of the statute. This argument also fails, as Plaintiff need only allege that the defendant was personally involved in the discrimination. *See Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir.2004) ("[P]ersonal liability under section 1981 must be predicated on the actor's personal involvement.") (quoting *Whidbee*, 223 F.3d at 75). Plaintiff alleges that Tefft made discriminatory comments both in person and through email that created a hostile work environment. Plaintiff has clearly alleged enough to state a claim of individual liability against Tefft under Section 1981.

Finally, Tefft argues that the alleged conduct is not severe or pervasive enough to state a claim under Section 1981. The severity and pervasiveness of Tefft's conduct is a factual question that is inappropriate to decide on a motion to dismiss. *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir.1997) ("The fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases.") (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The facts as pleaded with respect to Plaintiff's section 1981 claims are sufficient to survive a motion to dismiss.

### iv. State Claims

■ Tefft also moves to dismiss claims under New York Executive Law section 296 (McKinney 2001) and New York City Administrative Code section 8–107. These provisions impose liability on aiders and abettors of unlawful discriminatory practices. *See* N.Y. Exec. Law § 296(6) (McKinney 2001).[4] Tefft argues that these provisions cannot hold individuals liable for discriminatory employment practices. While the intermediate New York appellate divisions are split on this issue, *compare Steadman v. Sinclair*, 223 A.D.2d 392, 636 N.Y.S.2d 325 (App. Div. 1st Dep't 1996) (holding that individuals can be held liable under the Human Rights Law), *with Trovato v. Air Express Int'l*, 238 A.D.2d 333, 655 N.Y.S.2d 656 (App. Div.2d Dep't 1997)("To find a co-employee liable as an aider and abettor would ignore the statutory and legal authority limiting the parties who may be sued for employment discrimination."), the Second Circuit has held that individuals can be held liable under these specific state and city statutory provisions. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995). Virtually all courts in this district confronting this issue have followed suit. *See, e.g., Costabile v. County of Westchester*, 485 F.Supp.2d 424 (S.D.N.Y.2007); *King v. Town of Wallkill*, 302 F.Supp.2d 279 (S.D.N.Y.2004). This Court, following the decision of the Second Circuit, will not dismiss Plaintiff's state and city law claims against Tefft.

### v. The Federal Tort Claims Act

■ Tefft also argues that because the NYPD's Intelligence Division operated under the auspices of the federal HIDTA Program, he is transformed into a federal employee, and, accordingly, this case should have been brought against the United States pursuant to the Federal Tort Claims Act. 28 U.S.C. § 2679(b)(1)

---

4. The Administrative Code uses virtually identical language to and is subject to the same analysis as the Executive Law. *See Mohamed v. Marriott Int'l, Inc.*, 905 F.Supp. 141, 157 (S.D.N.Y.1995).

(2006).[5] However, as alleged in the Complaint, Tefft is not an employee or even a contractor of the federal government. Instead, Tefft was an employee of a contractor for the City of New York. Compl. ¶ 40 ("Bruce Tefft provided advising, consulting and/or computer related services to the City as a contractor for the City of New York with the Orion Corporation."); ¶ 43 ("Tefft's email briefings were sent to Plaintiff as part of Tefft's official job responsibilities and duties, pursuant to his status as a contractor for the City of New York."). This Court must take the allegations in Plaintiff's complaint as true for the purposes of Federal Rule of Civil Procedure 12(b)(6), *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir.2006), and, therefore, must assume, as Plaintiff has alleged in his Complaint, that Tefft was a contractor for the City of New York. Thus, the terms of the Federal Tort Claims Act cannot be stretched to include Tefft.

## CONCLUSION

For the reasons stated herein, Defendant Tefft's motion to dismiss the Complaint is DENIED.

**SO ORDERED.**

---

5. The Federal Tort Claims Act provides the exclusive remedy for "injury or loss of property or personal injury or death arising from or resulting from the negligent or wrongful act or omission of *any employee of the Government* while acting within the scope of his office or employment." *Id.* § 2679(b)(1).