# United States Court of Appeals
## For the First Circuit

No. 15-2568

DANIEL EMERSON MURILLO-ROBLES,

Petitioner,

v.

LORETTA E. LYNCH,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, <u>Chief Judge</u>,
Selya and Kayatta, <u>Circuit Judges</u>.

<u>Carlos E. Estrada</u>, with whom <u>Estrada Law Office</u> was on brief, for petitioner.
<u>Sabatino F. Leo</u>, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, with whom <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, and <u>Anthony P. Nicastro</u>, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

October 7, 2016

**SELYA**, <u>**Circuit Judge**</u>. Although the Board of Immigration Appeals (BIA) has broad discretion in the disposition of motions to reopen, broad discretion is not the same as unfettered discretion. This case, which arises out of an in absentia removal order against a youthful alien who was ill-served by not one but two lawyers, illustrates that verity. After careful consideration, we conclude that the BIA abused its discretion when it found that the circumstances attendant to entry of the removal order were not exceptional. Accordingly, we grant the petition for review, reverse the BIA's denial of the motion to reopen, and remand with instructions to set aside the in absentia removal order and reopen the petitioner's removal proceedings.

## I. BACKGROUND

The petitioner, Daniel Emerson Murillo-Robles, is a Peruvian national. He became a lawful conditional resident of the United States in 2001 at age 11. In October of 2003, his mother and his stepfather (a United States citizen) jointly filed an I-751 petition with United States Citizenship and Immigration Services (USCIS), seeking to make the petitioner's residency unconditional. USCIS denied this petition in November of 2006, citing the failure on the part of the attorney representing the family to respond in a timely fashion to its request for additional information.

The government proceeded to initiate removal proceedings against the petitioner in February of 2007. The petitioner conceded removability and sought review of the denial of the original I-751 petition. He received a series of continuances, partly because his mother and stepfather filed a second I-751 petition in 2009. That petition was denied by USCIS after the attorney who prepared it failed adequately to explain the delay in filing. The attorney was subsequently disbarred, and the petitioner's family hired a new attorney in the spring of 2011.

Eventually, a merits hearing was scheduled for April 30, 2012 at 8:00 a.m. That day, the petitioner did not appear at 8:00 a.m. but, rather, arrived at approximately 8:30 a.m., thinking that his hearing was set for 9:00 a.m. This interval, though brief, proved consequential: at 8:19 a.m., the immigration judge (IJ) entered an order of removal in absentia. When the IJ entered the order, he told the petitioner's lawyer that if she moved to reopen the case when the petitioner arrived, he would consider the motion. The petitioner appeared minutes later, and his family agreed to pay the lawyer to file a motion to reopen. Nevertheless, the lawyer did not file the motion (even though she took the money). Shortly thereafter, the lawyer's license to practice law was suspended for neglecting a number of immigration cases.

The petitioner retained yet a third attorney and moved to reopen his immigration case in July of 2015.[1]  He explained that his failure to arrive punctually at his April 2012 hearing stemmed from his mistaken assumption that this hearing — like many earlier immigration court hearings that he had attended on time — would commence at 9:00 a.m.  He also described the myriad ways in which his first two attorneys had provided ineffective assistance of counsel and argued that this deficient representation had prevented him from attaining legal permanent resident status.

The IJ agreed that the petitioner had received ineffective assistance of counsel and, thus, excused the untimely filing of his motion to reopen.  Withal, the IJ found that the petitioner had not carried his burden of showing that exceptional circumstances surrounded his failure to appear.  Noting that the hearing notice "clearly and unambiguously" showed an 8:00 a.m. start time, the IJ concluded that the petitioner's failure to be present at the appointed time could not be attributed to his lawyers' inadequacies.  Nor did the IJ perceive any sufficient reason for exercising his discretionary authority to reopen the case sua sponte.  See 8 C.F.R. § 1003.23(b).

---

[1]  This period of delay resulted, in part, from the petitioner's involvement in a drunk-driving case and his subsequent incarceration.  Both sides agree that this conviction does not bear directly on his immigration status.

- 4 -

In due course, the BIA affirmed the IJ's decision.  This timely petition for judicial review followed.  See 8 U.S.C. § 1252(a)(1), (b)(1).

## II.  ANALYSIS

In the immigration context, judicial review normally focuses on the decision of the BIA, which constitutes the agency's final order.  See Wan v. Holder, 776 F.3d 52, 55-56 (1st Cir. 2015).  But where, as here, the BIA merely adds its gloss to the IJ's findings and conclusions, we treat the two decisions as one. See id.

We review denials of motions to reopen for abuse of discretion.  See id.  The BIA's discretion is broad, but not limitless.  See Carter v. INS, 90 F.3d 14, 17 (1st Cir. 1996). The BIA can abuse its discretion in a variety of ways, such as "by neglecting to consider a significant factor that appropriately bears on the discretionary decision, by attaching weight to a factor that does not appropriately bear on the decision, or by assaying all the proper factors and no improper ones, but nonetheless making a clear judgmental error in weighing them." Henry v. INS, 74 F.3d 1, 4 (1st Cir. 1996); cf. White v. INS, 17 F.3d 475, 479 (1st Cir. 1994) (stating that "[i]mproper consideration of favorable or unfavorable factors by the BIA may sometimes constitute abuse of discretion").

The Immigration and Nationality Act (INA) provides that when an alien fails to appear at a removal hearing, he "shall be ordered removed in absentia" if the government can establish that he had due notice of the hearing and was otherwise removable. 8 U.S.C. § 1229a(b)(5)(A). An alien may seek rescission of such an order by moving to reopen within 180 days and demonstrating "that the failure to appear was because of exceptional circumstances." Id. § 1229a(b)(5)(C)(i); see 8 C.F.R. § 1003.23(b)(4)(iii)(A). The INA offers some illustrations, explaining that exceptional circumstances might include "battery or extreme cruelty to the alien," serious illness, the death or serious illness of a family member, or other similar circumstances beyond the alien's control. 8 U.S.C. § 1229a(e)(1).

If both the IJ and the BIA deny a motion to reopen an in absentia removal order, the alien may seek judicial review in the court of appeals. See id. § 1252(b)(2), (d)(1). That review is limited to the validity of the notice provided to the alien, the reasons for the alien's failure to appear, and the alien's removability. See id. § 1229a(b)(5)(D); see also Herbert v. Ashcroft, 325 F.3d 68, 71 (1st Cir. 2003). Here, the petitioner does not challenge the applicability of either the first or the third of these elements. Our inquiry, then, concentrates on the existence vel non of exceptional circumstances attendant to the petitioner's failure to appear.

- 6 -

To the extent that either the agency or the court is required to decide whether exceptional circumstances exist, the decisionmaker must take into account the totality of the circumstances. See Kaweesa v. Gonzales, 450 F.3d 62, 68-69 (1st Cir. 2006); Herbert, 325 F.3d at 72. Such an assessment may encompass a wide variety of pertinent considerations, including "the strength of the alien's underlying claim, the harm the alien would suffer if the motion to reopen is denied, and the inconvenience the government would suffer if the motion is granted." Kaweesa, 450 F.3d at 69. This emphasis on the totality of the circumstances is "grounded in due process considerations" and the need to "ensure that an alien is not deprived of a meaningful opportunity to be heard." Id. at 69-70.

Against this backdrop, we turn to the merits of the petition for review that is now before us. We hold that the BIA abused its discretion when it failed to consider the totality of the circumstances and, in particular, failed to give due weight to two salient factors that counseled in favor of reopening. In the pages that follow, we explain our reasoning.

To begin, the BIA — and for purposes of the ensuing "exceptional circumstances" analysis, we use the term "the BIA" as a shorthand for both the BIA and the IJ, collectively — took too narrow a view of the adverse effect of the petitioner's sub-par representation. While the BIA found that poor lawyering excused

the late filing of the motion to reopen, it stopped there.  In doing so, it failed to give due weight to the role that counsel's ineptitude played in converting the petitioner's minor tardiness into an intractable in absentia removal order.

It is common ground that "[i]neffective assistance of counsel during removal proceedings may comprise an exceptional circumstance" sufficient to warrant reopening.  Vaz Dos Reis v. Holder, 606 F.3d 1, 4 (1st Cir. 2010); see Saakian v. INS, 252 F.3d 21, 25 (1st Cir. 2001).  In this instance, counsel's ineffectiveness was apparent: she not only neglected to inform the IJ that her client was likely en route to the hearing but also failed to move to reopen or otherwise alert the IJ to the petitioner's arrival (despite the IJ's earlier invitation that she do so).  Had the attorney done her job in anything close to a competent manner, the odds are good that the case would have been reopened then and there.  Cf. Jerezano v. INS, 169 F.3d 613, 615 (9th Cir. 1999) ("It is accepted practice for courts to give tardy litigants a second chance by putting them at the end of the calendar, and it seems both harsh and unrealistic to treat as a nonappearance a litigant's failure to be in the courtroom at the precise moment his case is called.").  This was unquestionably ineffective assistance of counsel.  See Saakian, 252 F.3d at 24-25 (explaining that in a removal proceeding, ineffective assistance of counsel occurs when counsel's deficiencies render

the proceeding so fundamentally unfair that the alien is unable reasonably to present his case and is prejudiced as a result).

The second major flaw in the BIA's analysis is its failure to give proper weight to the minor extent of the petitioner's tardiness. Though some of our sister circuits have held that minor tardiness is not a failure to appear at all, see, e.g., Perez v. Mukasey, 516 F.3d 770, 774-75 (9th Cir. 2008); Abu Hasirah v. U.S. Dep't of Homeland Sec., 478 F.3d 474, 478 (2d Cir. 2007) (per curiam); Cabrera-Perez v. Gonzales, 456 F.3d 109, 116-17 (3d Cir. 2006) (per curiam); Alarcon-Chavez v. Gonzales, 403 F.3d 343, 346 (5th Cir. 2005), we need not go that far. Suffice it to say that all absences are not to be treated equally. In the circumstances of this case, the BIA ought to have differentiated between a total failure to appear and a tardy appearance — and it did not do so. This is especially important here because (as a general rule) minor tardiness should be excused more readily than more flagrant absences. See Jerezano, 169 F.3d at 615; cf. Herbert, 325 F.3d at 72 (expressing skepticism about whether minor tardiness should be treated as a "true failure to appear" (internal citation omitted)). We hold, therefore, that the BIA acted unreasonably when it gave no weight at all to the minor extent of the petitioner's tardiness. We add, moreover, that the BIA's omission is all the more stark given the petitioner's unbroken

record of timely appearances at a lengthy series of earlier immigration hearings.

The combined effect of the BIA's failure to give due weight to these two salient factors is magnified by the presence of other mitigating considerations. For instance, counsel's lackluster performance at the removal hearing was only the latest act of lawyerly incompetence visited upon the petitioner. Had the petitioner received effective assistance of counsel from the very beginning, he quite probably would have attained legal permanent resident status long before April of 2012. His first attorney bungled not one but two I-751 petitions. Then — when the petitioner's second attorney learned that the government might nonetheless be willing to exercise prosecutorial discretion in the petitioner's case — she neglected to follow up in any meaningful way: she did not file a new I-751 petition, did not request administrative closure, and did not so much as file a motion formally entreating the government to exercise prosecutorial discretion.

The short of it is that the petitioner's previous attorneys pulled the rug out from under him time and again, and this fact ought to have weighed heavily in the totality of the circumstances analysis. See Kaweesa, 450 F.3d at 69 & n.12 (emphasizing that the core of the analysis is the meaningful opportunity to be heard, which includes consideration of the

effectiveness of counsel's assistance); see also Vaz Dos Reis, 606
F.3d at 4.

What is more, the BIA should consider "the strength of
the alien's underlying claim" when it inquires into the existence
of exceptional circumstances and applies the totality of the
circumstances rubric.  Kaweesa, 450 F.3d at 69.  Here — even though
the petitioner has had some trouble with the law, see supra note
1 — this factor counsels in favor of reopening.  Had his previous
attorneys provided adequate assistance, the petitioner would have
been a promising candidate for legal permanent resident status: he
entered the United States legally more than 15 years ago at the
age of nine and has never left; he completed high school and
vocational school here; he attended a community college; his mother
has been married for some time to an American citizen; and his
younger brother already has received Deferred Action for Childhood
Arrivals (DACA) status.[2]

---

[2] Aliens with DACA status have been granted temporary relief from deportation to work or study in the United States.  The program is available to aliens who, among other things, entered the United States before a particular age, have continuously resided in the United States, and are either in school, have graduated from school, or are United States military veterans. Memorandum from Janet Napolitano, Sec'y, Dep't of Homeland Sec., to David Aguilar, Acting Comm'r, U.S. Customs & Border Prot., et al. 1 (June 15, 2012), https://www.ice.gov/doclib/about/offices/ero/pdf/s1-certain-young-people.pdf (last visited Sept. 29, 2016).

Finally, the factors that ordinarily militate against allowing motions to reopen are at a low ebb in this case. For example, we have stated that the exceptional circumstances standard is intended to remove the temptation to skip a hearing simply to delay imminent deportation. See Herbert, 325 F.3d at 71. Granting the petitioner's motion to reopen, though, would have done no violence to this principle: the record does not support an inference that the petitioner's late arrival at the hearing was motivated in any way by a desire to postpone an adjudication of his case. And we have been more forgiving of minor delays where, as here, nothing in the petitioner's record reflects any intent to avoid a hearing or delay removal. See Kaweesa, 450 F.3d at 71; Herbert, 325 F.3d at 72 n.1.

To sum up, the BIA neglected to give due weight to the role of the petitioner's lawyer in failing promptly to ameliorate the situation caused by the petitioner's late arrival at his removal hearing. This bevue was compounded by the BIA's failure to distinguish the petitioner's minor and uncharacteristic tardiness from a total boycott of — or an attempt to delay — a scheduled hearing and its concomitant failure to give due weight to the extremely modest extent of the petitioner's tardiness.

These failures, taken together, constituted exceptional circumstances sufficient to ground the petitioner's motion. And in all events, the totality of the circumstances was favorable to

reopening.  We thus hold that the BIA abused its discretion by finding that the circumstances that prevented the petitioner from having his day in court were unexceptional and by denying the motion to reopen.  The petitioner is entitled to present his case at a merits hearing.[3]

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we grant the petition for judicial review, reverse the BIA's denial of the motion to reopen, and remand with instructions to set aside the in absentia removal order and reopen the petitioner's removal proceedings.

**So ordered.**

---

[3] We do not have jurisdiction over — and therefore do not address — the petitioner's alternative claim that the BIA abused its discretion by failing to reopen his case sua sponte. See Charuc v. Holder, 737 F.3d 113, 115 (1st Cir. 2013) (explaining that it is "settled beyond hope of contradiction that the decision whether to exercise this sua sponte authority is committed to the unbridled discretion of the BIA" (internal citation omitted)).