# United States Court of Appeals
## For the First Circuit

---

No. 02-1950

DILAND DEXTER HERBERT,

Petitioner,

v.

JOHN D. ASHCROFT, Attorney General of the United States,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Lynch, <u>Circuit Judge</u>, and
Cyr and Stahl, <u>Senior Circuit Judges</u>.

---

<u>Derege B. Demissie</u> with whom <u>Doherty & Demissie</u> was on brief for petitioner.

<u>Janice K. Redfern</u>, Attorney, Office of Immigration Litigation, with whom <u>Robert D. McCallum, Jr.</u>, Assistant Attorney General, and <u>Christopher C. Fuller</u>, Senior Litigation Counsel, were on brief for respondent.

---

April 8, 2003

---

**LYNCH**, **Circuit Judge**.  Diland Herbert is a native and citizen of Trinidad and Tobago, a lawful permanent resident of the United States for almost twenty-five years, and the father of a ten-year-old American citizen.  He petitions for review of the denial of his motion to reopen a decision in absentia to deport him.  The motion was denied because he was approximately thirty minutes late for his hearing on January 11, 2002.  8 U.S.C. § 1229a(b)(5)(A) (2000).  This is, however, not a tardiness case alone; there are other unusual circumstances.  In light of these unusual circumstances, we grant the petition for review, reverse the denial of the motion to review, and remand to the agency for proceedings consistent with this opinion.

I.

Herbert's problems started with a criminal conviction in 1999 for domestic abuse of a woman who is now his fiancee and the mother of his child.  Herbert pled guilty in Massachusetts state court to family abuse/assault and battery, assault and battery on a police officer, and resisting arrest.  Herbert was originally sentenced to two years in prison; the court, however, granted his motion to reduce the sentence to a 364-day suspended sentence.  The INS charged Herbert with being subject to removal from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii) on the grounds that he had been convicted of an aggravated felony and sentenced to at least a year in prison.

-2-

The INS action led to a series of hearings beginning in September 2000 before immigration judges in Louisiana and Massachusetts. Herbert appeared at all but one of these hearings; at the Louisiana hearing where Herbert did not appear, Herbert's counsel informed the court that Herbert had moved to Massachusetts and requested, and obtained, a change of venue to the Boston Immigration Court. Counsel retained by Herbert appeared at several hearings and may have participated in all of them. At a hearing in Boston on January 10, 2001, Herbert admitted the charge of removability but requested an opportunity to apply for cancellation of removal under 8 U.S.C. § 1229b(b). Herbert submitted evidence showing that his sentence had been reduced to less than a year, which rendered him eligible for cancellation. The next day, the INS responded by filing an amended notice to appear that charged Herbert with removability under 8 U.S.C. § 1227(a)(2)(E)(i), based on his conviction for a crime of domestic violence. In response, Herbert again admitted the charge of removability, but applied for cancellation of removal. Herbert's amended application was admitted at a hearing on June 12, 2001. At the June 12 hearing, the IJ continued the case until January 11, 2002 and personally served Herbert and his counsel with notice of the next hearing.

The hearing on January 11, 2002 was scheduled for 1 p.m. At approximately 10:50 a.m. that day, Herbert's attorney, Stephen Lagana, filed an emergency motion for continuance with the IJ. The

-3-

motion explained that Attorney Lagana had been ordered to appear before a magistrate judge in federal district court for a hearing in another matter, continued from the preceding day. Lagana, who had told Herbert in a phone conversation on January 8, 2002 that he would be at Herbert's hearing, never communicated to Herbert or Herbert's family that he would be unable to participate. Later that day, Herbert told the IJ's clerk that he had expected Lagana to be there at the hearing to represent him.

Though Herbert himself arrived late, Herbert's mother, Angela Herbert-Thomas, and grandmother, Elty S. Herbert, arrived at the courthouse at 12:00 p.m. When Herbert did not arrive promptly, Herbert-Thomas informed the court personnel that she had spoken with Herbert that morning and that he would be arriving shortly. Despite Herbert-Thomas's statement and Lagana's motion, the IJ nevertheless proceeded in absentia and ordered Herbert deported to Trinidad and Tobago. The motion for a continuance was still pending when the IJ ordered Herbert deported.

Herbert himself arrived about thirty minutes late for the hearing. Herbert and his fiancee, Alisya Dancy, had planned to take public transportation to the hearing together with their child, but they elected to call a cab instead since it was raining and their child was recovering from a throat infection. Herbert and Dancy called the cab slightly after 12:00 p.m. and it arrived at 12:30 p.m. The cab was delayed by heavy traffic along

Massachusetts Avenue and I-93 North and arrived at the courthouse at 1:20 p.m. Herbert and Dancy were further delayed by a line at the courthouse entrance and did not actually arrive at the courtroom until around 1:30 p.m. After he arrived, Herbert spoke to the IJ's clerk, who advised him that he had 180 days to file a motion to reopen.

Herbert, who retained different counsel at Lagana's suggestion, filed a motion to reopen his removal proceedings on April 11, 2002 and an amended motion to reopen on April 16, 2002. In the motion, Herbert argued that his attorney's unexpected failure to appear, the heavy rainfall and traffic congestion, and his family's presence and communication with court personnel together constituted extraordinary circumstances within the meaning of 8 C.F.R. § 3.23(b)(4)(iii) (2002). In support of his motion, Herbert submitted affidavits from himself, Dancy, Herbert-Thomas, Elty, and his new attorney, and a copy of Lagana's emergency motion for continuance.

The IJ denied Herbert's motion in a written decision on April 26, 2002. The IJ held, "Pendency of a motion for continuance will not excuse appearance of the respondent at any scheduled hearing addressed in the motion." Because the court had not yet granted the continuance, the IJ concluded, the mere filing of the motion did not excuse Herbert's absence. The IJ also ruled that

unexpected traffic and heavy rainfall do not amount to exceptional circumstances. 8 U.S.C. § 1229a(e)(1).

Herbert appealed to the Board of Immigration Appeals. On July 24, 2002, the BIA affirmed, without opinion, the decision of the IJ. This appeal follows.

## II.

Our review of the BIA's denial of the motion to reopen is for abuse of discretion. INS v. Doherty, 502 U.S. 314, 323-24 (1992); Thomas v. INS, 976 F.2d 786, 789 (1st Cir. 1992) (per curiam).

Where the BIA has summarily affirmed the IJ's determination under its streamlined procedures, we treat the findings and conclusion of the IJ as the Board's own opinion. Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003); Chen v. INS, 87 F.3d 5, 8 n.3 (1st Cir. 1996). The IJ's decision thus stands as the final agency decision. See Albathani, 318 F.3d at 373; 8 C.F.R. § 3.1(a)(7)(iii).

Several statutory provisions are pertinent to the analysis. The first, 8 U.S.C. § 1229a(b)(5)(A), concerns in absentia hearings and provides:

> Any alien who, after written notice . . . has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the [INS] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable . . . .

-6-

A petition for review challenging an order entered in absentia is, by statute, "confined to (i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable." 8 U.S.C. § 1229a(b)(5)(D). The first and third clauses are not at issue. The adequacy of the agency's reasoning under the second clause is reviewed, as stated, for abuse of discretion.

Congress also gave guidance as to when a timely motion to reopen should be allowed:

> Such an order may be rescinded only --
>     (i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1) of this section)[.]

8 U.S.C. § 1229a(b)(5)(C). Subsection (e)(1) provides:

> The term "exceptional circumstances" refers to exceptional circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien.

8 U.S.C. § 1229a(e)(1). We focus here on the requirement of "exceptional circumstances . . . beyond the control of the alien."

These restrictions were adopted in response to a serious problem: some aliens deliberately did not appear for hearings and thus effectively extended their stay in this country. This tactic imposed considerable costs on the INS and disrupted its efforts to

promptly schedule and hear requests for discretionary relief from removal. This court has taken the restrictions seriously.

In Thomas, this court held, over the dissent of then-Judge Breyer, that where the petitioner and his attorney appeared approximately thirty minutes late, counsel had made no effort to contact the judge and inform him they would be delayed, and previous absences by the attorney (including one without explanation) had necessitated continuances, there was no abuse of discretion in denying a motion to reopen. See 976 F.2d at 788, 790. Thomas was the last and apparently only occasion on which this court addressed a similar issue.

Other circuits have sometimes found error in denial of motions to reopen when the petitioner was tardy. See, e.g., Nazarova v. INS, 171 F.3d 478, 484 (7th Cir. 1999) (holding that BIA abused its discretion by upholding IJ's denial of motion to reopen where alien was two hours late because she was waiting for her interpreter); Jerezano v. INS, 169 F.3d 613, 615 (9th Cir. 1999) (reversing denial of alien's motion to reopen where alien "was 15 to 20 minutes late, but arrived while the IJ was still on the bench").

We think this is one of those rare cases in which exceptional circumstances exist. The totality of the circumstances must be considered. The most important factor to us is that Herbert's counsel timely notified the IJ that he had been required

-8-

to appear that day in U.S. District Court and therefore requested a continuance of the immigration hearing. The IJ did not act on that motion, but rather conducted an in absentia hearing. We would think that ordinarily a requirement by a federal judge that counsel appear in federal court would be given precedence. The IJ, in denying the motion to reopen, rejected this circumstance with the comment that until he granted the continuance "all parties must attend the hearing and be prepared to go forward." It appears it was not possible for Herbert's counsel to attend separate, contemporaneous hearings before the federal magistrate judge and the IJ -- that is why the continuance was requested.[1] In that sense, the IJ's rejection of the motion for continuance as a reason to reopen was arbitrary and it was capricious.

As for the stated need of the parties to be present while the IJ decided the motion for continuance, there are two responses. First, under the regulations, Herbert was entitled to have counsel present. See Saakian v. INS, 252 F.3d 21, 24 (1st Cir. 2001) ("Aliens have a statutory right to be represented by counsel, at their own expense, in deportation proceedings. That right is an integral part of the procedural due process to which the alien is entitled.") (citation and internal quotation omitted); see also

_____

[1] The record shows that counsel had appeared with Herbert at prior hearings. There is nothing in the record to suggest the motion for a continuance was a ploy to avoid the deportation hearing. Indeed, Herbert's relatives and witnesses were apparently already on their way to the hearing when the motion was filed.

-9-

Romero-Morales v. INS, 25 F.3d 125, 130-31 (2d Cir. 1994) ("As the Supreme Court has noted, 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.'") (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)). It is highly improbable, to say the least, that Herbert would have chosen to go forward without his counsel on a matter of such importance to him. Second, Herbert believed his counsel would be there for the hearing -- he did not know of the motion for continuance. Had his counsel been there at 1 p.m., counsel would have explained, as Herbert's relatives did, that Herbert was on his way. Since the relatives were witnesses, their testimony could have been taken first, and there would have been no delay. Cf. Jerezano, 169 F.3d at 615 ("It is accepted practice for courts to give tardy litigants a second chance by putting them at the end of the calendar, and it seems both harsh and unrealistic to treat as a nonappearance a litigant's failure to be in the courtroom at the precise moment his case is called."). We question whether, on these unique facts, there was even a true "failure to appear." See id.

We would agree with the INS that if there were meaningful delay and if this were a simple situation of Herbert miscalculating how long it would take him to get to the hearing room on a winter's day in Boston, this rationale would not suffice to overturn a

denial of a motion to reopen.[2]  See, e.g., Sharma v. INS, 89 F.3d 545, 547-48 (9th Cir. 1996).  But that situation is not this case, and here the agency acted arbitrarily and capriciously in denying the motion to reopen.  The circumstances in this case were in fact exceptional.  See Nazarova, 171 F.3d at 484 ("We . . . agree with the Second Circuit that, when an IJ's decision to enter an in absentia deportation order and her subsequent refusal to reopen the order threaten the alien's constitutional or statutory rights, circumstances may exist that are sufficiently exceptional to excuse nonappearance and warrant remand."); Romero-Morales, 25 F.3d at 129 (identifying the alien's good faith reliance on counsel and the availability of relatives to testify on his behalf as factors that could contribute to a finding that extraordinary circumstances exist).

Accordingly, we **grant** the petition, **vacate** the denial of the motion to reopen, and **remand** to the agency with directions that Herbert be permitted to present his claims for cancellation of removal.  So ordered.


**\*Dissent follows\***

---

[2] We do not reach the claim of denial of due process or the question of what role the child's illness should play in the analysis.

-11-

**CYR, <u>Senior Circuit Judge, dissenting</u>**.  I would remand this case for further proceedings due to the fact that the record on appeal is insufficiently developed to enable a reliable appellate determination as to whether the denial of the motion to reopen constitutes an abuse of discretion, let alone an arbitrary and capricious agency action.