# United States Court of Appeals
## For the First Circuit

No. 06-1579

RENSON FELIZ,

Petitioner,

v.

ALBERTO R. GONZALES,
United States Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Lidia M. Sanchez on brief for petitioner.
Joshua E. Braunstein, Attorney, Office of Immigration
Litigation, Peter D. Keisler, Assistant Attorney General, and
Terri J. Scadron, Assistant Director, on brief for respondent.

May 25, 2007

**LYNCH**, <u>**Circuit Judge**</u>.  This petition for review seeks, on various grounds, to vacate a removal order returning Renson Feliz to the Dominican Republic, his country of origin and citizenship.

One of Feliz's claims is that the Immigration Judge (IJ) erred in failing to grant him a continuance.  Despite the respondent's contrary arguments in this case, the Attorney General has conceded in another case that this court has jurisdiction to consider claims that an IJ erred in denying a continuance. <u>Alsamhouri</u> v. <u>Gonzales</u>, ___ F.3d ___, No. 05-2800, 2007 WL 1153033, at *3 (1st Cir. Apr. 19, 2007).

While we have jurisdiction over the continuance claim, the petitioner's argument based on lack of a continuance still fails.  At a minimum, the petitioner never asked for or otherwise indicated clearly to the IJ that he sought a continuance.  Feliz's other arguments are also without merit, and as a result, we deny the petition for review.

I.

Petitioner Renson Feliz was granted conditional permanent resident status in September 1998 based on his marriage to a United States citizen.  In August 2000, he and his wife filed a Form I-751 joint petition to remove the conditions on Feliz's permanent resident status.[1]

---

[1]  Under the Immigration and Nationality Act, a conditional permanent resident normally must file, jointly with his spouse, a petition seeking the removal of conditions during the ninety-day

The INS[2] scheduled an interview on the petition for December 9, 2002. Feliz appeared, but his wife did not; he explained that she was in the Dominican Republic for medical treatment and asked for a postponement. Feliz was sent by mail notice of a new interview date of June 12, 2003, but neither he nor his wife appeared. On May 28, 2004, Feliz was sent a notice of termination of his permanent resident status and a notice to appear (NTA). The NTA was based on the termination of Feliz's permanent resident status for failure to appear at the June 12, 2003 interview. Feliz was thus removable under 8 U.S.C. § 1227(a)(1)(D)(i).

Feliz appeared in removal proceedings before an IJ on August 25, 2004, and he explained his absence from the interview on his I-751 petition in June 2003 by saying he had never received notice of it. His wife was not with him on August 25. The IJ gave Feliz a new hearing date of February 7, 2005, and told Feliz and his counsel twice that Feliz's wife needed to be present at that hearing. The IJ stated that evidence would be taken at that time

period preceding the second anniversary of obtaining conditional permanent resident status. 8 U.S.C. § 1186a(c), (d)(2)(A). The couple also must attend an interview with an officer of the INS. Id. § 1186a(c)(1)(B). The purpose of the petition and interview is to determine whether or not the marriage is bona fide. See id. § 1186a(d)(1).

[2] On March 1, 2003, the functions of the INS were transferred to the Department of Homeland Security. Homeland Security Act of 2002, Pub.L. No. 107-296, § 471(a), 116 Stat. 2135, 2205 (codified at 6 U.S.C. § 291(a)).

on whether Feliz and his wife had received notice of the June 12, 2003 hearing.

Running true to pattern, Feliz appeared at the February 7, 2005 hearing with counsel but without his wife. Feliz claimed that he did not know his wife's presence was needed, although the IJ had specifically told him on August 25 that she was required to attend. Feliz also testified that his wife suffered from arthritis, and that the cold February weather was bad for her. The IJ rejected Feliz's explanations for his wife's failure to attend the hearing and found that Feliz had failed to establish lack of notice of the June 2003 interview. Accordingly, the IJ found that Feliz was removable and granted him the privilege of voluntary departure by April 8, 2005.

On April 16, 2005, Feliz refiled an I-751 petition. The Board of Immigration Appeals (BIA) thereafter affirmed the IJ's decision without opinion, pursuant to 8 C.F.R. § 1003.1(e)(4).

Feliz filed a timely petition for review.[3]

## II.

Feliz presents three claims of error in his petition for review. He argues that the IJ erred as a matter of law and abused his discretion in failing to grant a continuance at the February 7 hearing so that Feliz could refile his I-751 petition. Feliz also

---

[3] This court tolled the remaining period of voluntary departure, pending judicial review.

argues that the IJ erred in failing to terminate the removal proceedings against him. Finally, Feliz argues that the BIA's use of its summary affirmance procedures in his case exceeded the scope of the affirmance without opinion (AWO) regulations.

A.      Continuance Claim

We review claims that an IJ erred in not granting a continuance for abuse of discretion. Alsamhouri, 2007 WL 1153033, at *4.

In his petition for review, Feliz states that the BIA has established that IJs should grant continuances of removal proceedings to allow for adjudication of late-filed applications for waiver of the joint petition requirement. See, e.g., In re Stowers, 22 I. & N. Dec. 605, 612-14 (BIA 1999). Feliz argues that his situation is analogous to the waiver application situation, and that BIA precedent thus required the IJ to grant a continuance.

There is no need to explore the issue because no request for a continuance was made at the February 7, 2005 hearing. At most, counsel for Feliz indicated that she preferred to refile a Form I-751 rather than apply for voluntary departure. Moreover, Feliz had no I-751 petition pending with the Department of Homeland Security, and he has given no explanation for why he could not have refiled his I-751 or sought rescheduling of the missed interview, see 8 C.F.R. § 216.4(b)(3), before the February 7 hearing.

B.      The IJ's Refusal to Terminate Removal Proceedings

Unless a petitioner shows "good cause" for failure to appear at a joint petition interview, the Department of Homeland Security will automatically terminate an alien's conditional permanent resident status as of the second anniversary of its conferral. 8 U.S.C. § 1186a(c)(2)(A)(ii); 8 C.F.R. § 216.4(b)(3). Feliz argues that the IJ erred in finding that he had not established "good cause" for failing to appear at the June 2003 interview, and in therefore refusing to terminate the removal proceedings against him.

We will uphold the BIA's finding that Feliz did not establish good cause if it is supported by substantial evidence. See 8 U.S.C. § 1252(b)(4)(B); Rodriquez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005) ("[A]n inquiring court must uphold the BIA's resolution of [fact-driven] issues so long as its decision is supported by substantial evidence in the record."). Because the BIA summarily affirmed the IJ's determination, we review the opinion of the IJ as if it were that of the BIA. Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003).

Relying on the Ninth Circuit's decision in Agyeman v. INS, 296 F.3d 871 (9th Cir. 2002), Feliz appears to argue that his wife's poor health constituted good cause for their failure to appear at the interview. Agyeman is inapposite. There is no evidence that this is a case in which ill health accounted for the failure to appear at the June 12, 2003 interview. Feliz's wife's

health has never before been offered by Feliz as a reason for their failure to appear at that interview. Rather Feliz said he did not receive notice of the interview; the IJ's finding that this was not true was based on substantial evidence.

At the hearing, the government presented evidence that the interview notice had been mailed to Feliz at his record address and that it had not been returned. The government also indicated that the notice for the first interview and the NTA had been mailed to the same address and apparently had been received. In addition, Feliz's credibility suffered substantially when he testified about why his wife did not appear at the February 7, 2005 hearing. When the IJ rejected Feliz's brazen claim that he had not known that his wife's presence was required at the hearing, Feliz added that she suffered from arthritis and so couldn't "be in the cold much." He did not assert that she was actually unable to appear, nor had he earlier told the IJ that there would be any difficulty with her appearing.

To the extent Feliz argues that his wife's ill health constituted good cause for her failure to appear on February 7, and that the IJ therefore should not have found him removable based on her failure to appear, his argument essentially is that the IJ should have granted another continuance. See 8 C.F.R. § 1003.29.

In Herbert v. Ashcroft, 325 F.3d 68 (1st Cir. 2003), this court reversed an IJ's denial of a petitioner's motion to reopen

when the petitioner's counsel had filed a motion for a continuance and the petitioner had failed to appear at a hearing. Id. at 69-70. In that case, the petitioner's attorney had filed on the day of the hearing an emergency motion for a continuance based on the fact that he was required to appear on a case in federal court at the same time. Id. at 70. The attorney never notified the petitioner of the motion or of his conflict, and, primarily because of transportation difficulties, the petitioner arrived approximately thirty minutes late to the hearing. Id. The petitioner's relatives arrived on time to the hearing and informed court personnel that the petitioner would be arriving shortly. Id. Despite this assurance and the attorney's motion for a continuance, however, the IJ proceeded in absentia and ordered the petitioner deported. Id. The petitioner filed a motion to reopen, citing extraordinary circumstances, see 8 C.F.R. § 3.23(b)(4)(iii) (2002), which was denied. Herbert, 325 F.3d at 70.

In Herbert, we held that if there were indeed a failure to appear, it was excused by exceptional circumstances. Id. at 72-73. We noted that had the petitioner's attorney been able to appear, he would have informed the IJ that the petitioner was on his way. Id. at 72. We further noted that had the petitioner arrived on time, he likely would not have elected to proceed without counsel. Id. Finally, we observed that the petitioner's

-8-

family had arrived at the hearing on time, and that their testimony could have been taken first, thereby avoiding any delay.  Id.

The facts of this case are very different.  No continuance was ever requested here.  Nor was Feliz's wife merely late; Feliz indicated that she would not appear at all.  The case already had been continued once before, and there was no indication that another continuance would result in the appearance of Feliz's wife.  The IJ did not abuse his discretion in not granting a continuance to allow Feliz's wife to appear.

Finally, Feliz also argues that the IJ erred in rejecting his counsel's proffer of a joint tax return as evidence that Feliz and his wife had a bona fide marriage.  The issue before the IJ was only whether Feliz and his wife had good cause for failing to appear for their interview on June 12, 2003.  The IJ indicated that if both Feliz and his wife had testified that they had not received notice and if he had seen evidence that the marriage was bona fide, then he might have been inclined to terminate the removal proceedings.  Given that substantial evidence supports the IJ's decision that Feliz failed to establish that he had not received notice of the June 12, 2003 interview, the issue of whether the marriage was bona fide is, as the IJ stated, irrelevant.  The IJ therefore committed no error in refusing to accept Feliz's evidence of a bona fide marriage.

C.      Claimed Violation by the BIA of Its Summary Affirmance
        Procedures

Feliz argues that the case should be remanded to the BIA for further review because the BIA violated its summary affirmance regulation, 8 C.F.R. § 1003.1(e)(4), in issuing an AWO. Feliz does not argue that the BIA's use of its AWO procedures has denied him due process of law.[4] Rather, he argues that issuance of an AWO was not appropriate in his case because the two predicate prongs of 8 C.F.R. § 1003.1(e)(4) were not met. Pursuant to 8 C.F.R. § 1003.1(e)(4), summary affirmance is appropriate only when a Board member determines that, inter alia, (1) "the result reached in the decision under review was correct"; and (2) "any errors in the decision under review were harmless or nonmaterial."

There is an initial question about whether we have jurisdiction to review Feliz's claim that the BIA violated its own AWO procedure. The circuits have split on this issue. Compare Kambolli v. Gonzales, 449 F.3d 454, 463 (2d Cir. 2006) (no jurisdiction), Tsegay v. Ashcroft, 386 F.3d 1347, 1353-58 (10th

_____

[4]    In Albathani, this court rejected a claim that the AWO procedure itself, as enhanced in 2002, violates due process, inherent principles of administrative law, or any statute. 318 F.3d at 375-79. The other circuits to have addressed the issue have agreed. Blanco de Belbruno v. Ashcroft, 362 F.3d 272, 282-83 (4th Cir. 2004); Zhang v. U.S. Dep't of Justice, 362 F.3d 155, 157 (2d Cir. 2004); Yuk v. Ashcroft, 355 F.3d 1222, 1229 (10th Cir. 2004); Loulou v. Ashcroft, 354 F.3d 706, 708-09 (8th Cir. 2003); Dia v. Ashcroft, 353 F.3d 228, 238 (3d Cir. 2003); Denko v. INS, 351 F.3d 717, 730 (6th Cir. 2003); Falcon Carriche v. Ashcroft, 350 F.3d 845, 850 (9th Cir. 2003); Georgis v. Ashcroft, 328 F.3d 962, 967 (7th Cir. 2003); Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1288 (11th Cir. 2003); Soadjede v. Ashcroft, 324 F.3d 830, 832-33 (5th Cir. 2003) (per curiam).

Cir. 2004) (same), and Ngure v. Ashcroft, 367 F.3d 975, 988 (8th Cir. 2004) (same), with Smriko v. Ashcroft, 387 F.3d 279, 290-95 (3d Cir. 2004) (jurisdiction), and Chong Shin Chen v. Ashcroft, 378 F.3d 1081, 1086-88 (9th Cir. 2004) (same). In Haoud v. Ashcroft, 350 F.3d 201 (1st Cir. 2003), this court held that we had jurisdiction to review the BIA's decision to employ its AWO procedures in a case involving both reviewable and non-reviewable bases for the IJ's decision when it was unclear on which basis the BIA had summarily affirmed and when the BIA may have failed to consider a precedent helpful to the petitioner. Id. at 206; see also Hoxha v. Gonzales, 446 F.3d 210, 220-21 (1st Cir. 2006). We remanded so that we would have a reasoned basis on which to conduct judicial review. Haoud, 350 F.3d at 207-08. The breadth of Haoud's reach beyond its particular facts is something of an open question, see Aguilar v. Gonzales, 475 F.3d 415, 418 (1st Cir. 2007); Hoxha, 446 F.3d at 220-21, and a narrow reading has been suggested by the Eighth Circuit in Ngure, 367 F.3d at 988.

We bypass the jurisdictional question because we have already rejected the premise of Feliz's argument -- that the IJ's decision was improper.

The petition for review is denied.