Not For Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 07-2054

ROBERTO LOYO-ARÉVALO,

Petitioner,

v.

MICHAEL B. MUKASEY,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Cudahy,[*] Senior Circuit Judge,
and Lipez, Circuit Judge.

Ronald W. Thompson, on brief for petitioner.
Remi Adalemo, Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division, and John C. Cunningham, Senior Litigation Counsel, on brief for respondent.

July 2, 2008

---

[*] Of the Seventh Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Roberto Loyo-Arévalo ("Loyo")
is a twenty-eight year-old national of Guatemala who entered the
United States without inspection in December 1999.  Loyo was placed
in deportation proceedings, and he requested withholding of removal
based on political persecution.  The immigration judge ("IJ") found
Loyo's allegations of persecution to be incredible, denied his
petition to withhold removal, and ordered him removed to Guatemala.
The Board of Immigration Appeals ("BIA") summarily affirmed this
decision.  After careful consideration, we deny Loyo's petition.

## I.  Background[1]

Loyo claims that when he was in Guatemala he was
politically active in the Guatemala Republican Front ("FRG") and
officially joined the party in mid-1999.  In November 1999, he
assisted the campaign of FRG presidential candidate Alfonso
Portillo in his hometown of Zacapa, distributing flyers and talking
to people about Portillo's platform.

While riding with Portillo's 100-plus car motorcade
between Zacapa and San Jorge, Loyo claims to have been attacked
when he stopped his vehicle to set up fireworks on the side of the
road.  He was allegedly shot in the left leg.  He did not see his
attacker, but asserts that the shots came from behind bushes on the

---

[1]  We gather the facts as presented to the IJ, along with the
affidavit accompanying Loyo's withholding application, and consider
the agency's findings with respect to that evidence.  See Sok v.
Mukasey, 526 F.3d 48, 50 (1st Cir. 2008).

side of the road. Nobody else was injured. Loyo was taken to a hospital under police protection, which he claims was necessary because rivals would often come to the hospital to kill a target who survived an attack. He left the hospital without an operation because he claims his family received threats about his safety. At home, he and his family received threatening phone calls nearly every day for six months -- even after Loyo left the country -- until the callers realized that he was no longer in Guatemala. Fearing for his life, Loyo testified that he applied for a U.S. visa before the shooting in 1999, but was denied. He later obtained a visa to Mexico. In December 1999, he left Guatemala and crossed the border into Texas from Mexico. After his arrest with his brother for a traffic violation in 2003, Loyo was placed in deportation proceedings.

During the proceedings, Loyo admitted to removability, but filed a petition for withholding of removal. On January 12, 2006, the IJ denied Loyo's petition and ordered him removed. The IJ based this decision on the determination that Loyo's allegations of persecution were not credible because of a number of inconsistencies in his representation before the court: First, Loyo testified that he stayed at the hospital for three days and that he did not have an operation on his leg; his I-589 form stated that he stayed at the hospital for ten days and that he had an operation. Second, Loyo testified that the bullet went through his

left leg; one of his corroborating documents, however, stated that he had been shot in his right leg and there was no exit wound. Third, Loyo testified that he was shot in November 1999; his supporting documents, however, indicate that the shooting occurred on October 31, 1999. Fourth, Loyo testified that he applied for a U.S. visa before he was shot; his Form I-589, however, said he applied for the visa after he was released from the hospital. Furthermore, the IJ found that Loyo had not sufficiently corroborated his claims that he was shot in the leg during a political campaign or that he was threatened after the alleged shooting, thus undermining his claim that he was targeted for his political beliefs. Accordingly, the IJ concluded that Loyo had not established past persecution based on political affiliation. The BIA affirmed, and Loyo now petitions for review.

## II. Discussion

### A. Standard of Review

Where, as here, the BIA summarily affirms the IJ's decision, we review the IJ's decision. See Tota v. Gonzáles, 457 F.3d 161, 165 (1st Cir. 2006). We review the findings of fact and the reasons given for substantial evidence, where the credibility determination must be upheld "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Journal v. Keisler, 507 F.3d 9, 12 (1st Cir. 2007) (quoting 8 U.S.C. § 1252(b)(4)(B)).

-4-

**B. Withholding of Removal**

Loyo asserts that the IJ's determination and order of removal was not based on substantial evidence and should be vacated. He claims that he was not offered any opportunity to explain any of these discrepancies, and such discrepancies did not reach the heart of his claim. He also claims that he did not obtain any additional corroborating evidence because he did not know such evidence was necessary and he was not instructed to do so by his counsel. We find his arguments unavailing.

Withholding of removal is a form of relief available to an alien who establishes that it is more likely than not that he would be persecuted if he returns to his country of origin. See 8 C.F.R. § 1208.16(b)(2); Journal, 507 F.3d at 13. An adverse credibility determination disposes of an alien's claim of past persecution. See Toloza-Jiménez v. Gonzáles, 457 F.3d 155, 160 (1st Cir. 2006) (citing Olujoke v. González, 411 F.3d 16, 22 (1st Cir. 2005)). An alien may be found to be incredible based on discrepancies in testimony where "(1) the discrepancies and omissions described by the [IJ or BIA] are actually present; (2) these discrepancies and omissions provide specific and cogent reasons to conclude that the respondent provided incredible testimony; and (3) the respondent has not provided a convincing explanation for the discrepancies and omissions." In re A-S-, 21

I. & N. Dec. 1106, 1109 (BIA 1998); see also Hoxha v. Gonzáles, 446 F.3d 210, 216-17 (1st Cir. 2006).

Substantial evidence in the record supports the IJ's finding that Loyo failed to meet his burden of establishing eligibility for withholding of removal. The record supports the IJ's finding that Loyo was not a credible witness, and he failed to provide sufficient corroborating evidence. See 8 C.F.R. § 1208.13 (a). Loyo rests his entire relief application on a single incident -- the alleged shooting -- that is not adequately documented, and his story has numerous inconsistencies.

The IJ's credibility determination is supported by substantial evidence. Loyo was given the opportunity to account for the inconsistencies noted above during cross-examination at his deportation hearing; he was unable to do so. Loyo could not adequately explain the inconsistency regarding how long he was in the hospital. His claim that he did not remember only serves to render him more incredible.[2] Loyo's testimony as to other inconsistencies in his supporting documents -- that they were written in by Guatemalan officials who "write down whatever they want" -- undermines the authenticity of the few documents he did

---

[2] Loyo also testified that the night he left the hospital his house was surrounded by people who dared him to come out, but when he was asked about this incident on cross-examination and why he had not mentioned it in his application, he twice claimed that he had mentioned it in his application. The incident does not appear in his application.

submit.[3]  While some of the discrepancies may seem minor, "their cumulative effect is great."[4]  Pan v. Gonzáles, 489 F.3d 80, 86 (1st Cir. 2007).  The IJ gave a "'specific, cogent, and supportable explanation'" for his adverse credibility determination.  Yosd v. Mukasey, 514 F.3d 74, 80 (1st Cir. 2008) (quoting Heng v. Gonzáles, 493 F.3d 46, 48 (1st Cir. 2007)).  Loyo has failed to meet the high threshold of showing that a reasonable fact-finder would be compelled to find otherwise.

### C. Summary Affirmance Procedure

Loyo asserts that the BIA abused its discretion in using the summary affirmance procedure in this case, and he challenges this court's jurisdiction over his claim that the BIA violated the summary affirmance procedure.  He claims that summary affirmance was not appropriate under 8 C.F.R. § 1003.1(e)(4)(i) because the lower IJ opinion 1) was not correct, and 2) its errors were not harmless or non-material.  We disagree.

As we found above, the IJ's decision was correct and supported by substantial evidence.  As such, Loyo's statutory argument fails.  The BIA was within its statutory discretion to utilize the summary affirmance procedure.  See Hoxha, 446 F.3d at

---

[3]  The police report he submitted, for example, states only that Loyo was shot while walking.  The report does not mention anything about a presidential motorcade or campaign.

[4]  For example, Loyo was also unable to adequately explain why he testified that his brother came to the United States in 2004 when they were arrested together in 2003.

-7-

220-21.  The jurisdictional issue pointed out by the parties will have to await resolution on another day.  <u>See</u> <u>Feliz</u> v. <u>Gonzáles</u>, 487 F.3d 71, 75-76 (1st Cir. 2007).

### III.  <u>Conclusion</u>

For the reasons stated above, Loyo's petition is denied.

**<u>Denied</u>**.