# United States Court of Appeals
## For the First Circuit

No. 08-1128

SOLANGE LEVEILLARD RAVIX, ET AL.,

Petitioners,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Selya and Stahl, Circuit Judges.

Susanna L. Shafer and Law Office of Susanna L. Shafer on brief
for petitioners.
Richard Zanfardino, Office of Immigration Litigation, Civil
Division, Department of Justice, Gregory G. Katsas, Assistant
Attorney General, Civil Division, and Anthony W. Norwood, Senior
Litigation Counsel, on brief for respondent.

January 12, 2009

**Per Curiam**.  Solange Leveillard Ravix, her husband Emile, and their two children, who are natives and citizens of Haiti, seek review of the decision of the Board of Immigration Appeals ("BIA") dismissing their appeal from the decision of an immigration judge ("IJ") denying their claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") and reinstating an order of voluntary departure.

The relevant facts underpinning their claims, as recounted by Solange and Emile Ravix in their testimony before the IJ and their affidavits supporting the application, are as follows: Both were members of the Parti Louvri Barye ("PLB"), which was opposed to the then-ruling Lavalas party.  Emile ran as the PLB candidate for Deputy of his hometown, Mirebalais, in the 2000 national election.  Several incidents occurred that the Ravixes believe to be related to their political activity.

On October 28, 1999, on the way home from a political meeting in Port-au-Prince, the bus Emile was riding stopped because of a disturbance in the street.  Emile got out to see what was happening and was struck in the head by a stone.  A friend who was with him at the time told Emile that he believed the attack was politically motivated after hearing a pro-Lavalas gang say that "we missed him, but we will get him."  Emile reported the incident, but the police commissioner, who was a friend, said that he could not help or he would place himself at risk.

-2-

In March 2000, Emile was fired from his job at Haiti TeleCom after making a speech during his campaign critical of the Lavalas government.  Solange testified that she was verbally abused because of Emile's role in the PLB.  On May 21, 2000, Solange acted as an election observer for the PLB.  She reported election irregularities to her husband, who then publicly denounced the results.  That night pro-Lavalas group members showed up at the Ravixes' house.  Emile fled, later learning that they had been there to assassinate him.

After the 2000 election, Emile and Solange both left their home, fearful of political reprisals.  Solange went to live with her parents while Emile traveled around the country engaging in political activities.  Emile visited the United States on behalf of the PLB on two occasions, in September 2000 and January 2001, returning to Haiti both times.  A cousin living in the Ravix home while they were absent told them that some people had come looking for Emile and had rifled through his belongings.  Lavalas party members also pushed their way into a PLB party member's house looking for Emile.

When Jean-Bertrand Aristide--the head of the Lavalas party--took office as president in February 2001, the Ravixes moved back into their home.  On April 3, 2001, two men from a local pro-Lavalas group came and threatened Emile with a gun, warning him to stop speaking out about Haitian politics.  On May 29, 2001, Emile

left Haiti for the United States after consulting with his wife and party members, who advised him to leave. He was admitted to the United States as a visitor permitted to remain until November 28, 2001; he has not returned to Haiti but did not file for asylum.

Solange traveled to the United States with Emile on May 29, 2001, but returned home two weeks later, and again visited Emile from December 2001 to January 2002. On September 13, 2002, Solange received a call at the hospital where she worked from a man demanding to know Emile's whereabouts. The man said that if Solange failed to tell him where to find Emile, her family would be killed; he also referred to an incident in which the family of a Lavalas political activist was killed earlier that year.

On September 15, 2002, a friend of Solange, who was the girlfriend of a pro-Lavalas group member, called to tell Solange that she and her family were in danger. The next day, Solange and the children moved to Port-au-Prince and stayed with her sister, arranging travel to the United States. On October 1, 2002, Solange and the two children went to the United States, being admitted as nonimmigrant visitors until March 30, 2003. Solange filed a timely application for asylum, naming Emile and the children on the application.

Solange, Emile, and the two children were charged with remaining in the United States longer than permitted. 8 U.S.C. § 1227(a)(1)(B). The Ravixes conceded removability, but sought

asylum, withholding of removal, and relief under the CAT, or, in the alternative, voluntary departure. The IJ denied all relief save voluntary departure, but he issued a supplemental decision withdrawing his grant of voluntary departure as the Ravixes rescinded their request for it. The BIA affirmed and reinstated the voluntary departure order.

The BIA essentially adopted the IJ's decision, so we treat the IJ's facts and conclusions as those of the BIA. Herbert v. Ashcroft, 325 F.3d 68, 71 (1st Cir. 2003). Such factual findings are upheld when "supported by reasonable, substantial, and probative evidence on the record considered as a whole," INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)), and are reversed only if a reasonable factfinder would be compelled to conclude the contrary. Id. at 483-84 (codified at 8 U.S.C. § 1252(b)(4)(B)).

To show entitlement to asylum, the Ravixes had to establish a well-founded fear of future persecution on account of race, religion, nationality, membership in a social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(b). A showing of past persecution gives rise to a rebuttable presumption of future persecution. 8 C.F.R. § 208.13(b)(1). The acts of persecution need not be personal to the one seeking asylum if they create a well-founded fear of

-5-

persecution in that person.  See Jorqji v. Mukasey, 514 F.3d 53, 57 (1st Cir. 2008).

The IJ found the Ravixes to be credible, but ruled that the events they recounted did not rise to the level of past persecution.  He noted that the threats to Solange were not due to her own political activities but to those of her husband,[1] that she was never personally harmed and that the Ravixes had made several trips to the United States and returned to Haiti.  Their extended families remain in Haiti unharmed today.  As to the phone threat, the caller was unidentified and nothing more happened.

The IJ also found that Solange did not have a well-founded fear of future persecution that was objectively reasonable.  See Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005).  He did not regard the rock throwing incident as shown to have been directed at Emile.  He also doubted that Emile could be regarded as in hiding following the May 2000 election since he continued to participate in political activity.  Further, thereafter Emile traveled to the United States but did not seek asylum.  In addition, while political conditions in Haiti remained unstable, the Lavalas party was no longer in power and democratic elections had been held.

---

[1]To the extent the IJ's opinion could be read as finding that Solange could not as a matter of law base a claim for asylum on her husband's political activity, it is incorrect.  Gebremichael v. INS, 10 F.3d 28, 36-37 (1st Cir. 1993).  However, the IJ's decision does not depend on that conclusion, but rather on the finding that she was not persecuted at all.

The IJ's findings were supported by substantial evidence. Even if the Ravixes genuinely believed that the stone throwing incident was politically motivated, a gang would hardly know that Emile would step off the bus in response to a disturbance. And even if the gang had targeted Emile, one isolated violent incident is generally insufficient to constitute past persecution. See Bocova v. Gonzales, 412 F.3d 257, 263-64 (1st Cir. 2005).

Aside from this one incident, the Ravixes' claims amount to a series of isolated threats and harassment. Credible, imminent threats can rise to the level of persecution, Un v. Gonzales, 415 F.3d 205, 210 (1st Cir. 2005), but the IJ could reasonably find that the threats, while undoubtedly frightening, were not sufficiently credible or imminent to rise to the level of persecution. That Emile waited almost two months after the April 3, 2001, threat before leaving Haiti suggests that he did not view any potential harm as imminent.

As to a fear of future persecution, the time lapse since the threats and the subsequent fall from power of Lavalas were reasonable factors to take into account. So too was the fact that the Ravixes' families still reside in Haiti undisturbed. See Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999). Conceivably, the IJ could have decided in favor of the applicants, but the weighing of evidence and the drawing of reasonable inferences is for the IJ and BIA.

Being ineligible for asylum, the Ravixes could not meet the higher withholding of removal standard.  Orelien v. Gonzales, 467 F.3d 67, 73 (1st Cir. 2006).  The CAT claim was properly rejected for lack of evidence of any threat of torture. The government concedes that the voluntary removal direction was erroneous because "[v]oluntary departure may not be granted unless the alien requests such voluntary departure and agrees to its terms and conditions." 8 C.F.R. § 240.25(c).

The petition for review is denied except that the provision ordering voluntary removal is stricken.

It is so ordered.