In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-3065

SOULEYMANE NIMAGA,

*Petitioner,*

*v.*

TODD W. BLANCHE,
Acting Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals
No. A088-944-732

ARGUED SEPTEMBER 9, 2025 — DECIDED APRIL 29, 2026

Before ROVNER, HAMILTON, and SCUDDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Souleymane Nimaga, a native of
Ivory Coast and a citizen of Mali, seeks review of a Board of
Immigration Appeals decision affirming the denial of his mo-
tion to reopen his Immigration Court proceeding and rescind
the order of removal that the Immigration Judge entered in

absentia when Nimaga failed to appear for a hearing. For the reasons that follow, we deny the petition for review.

**I.**

Nimaga entered the United States in August 2000 as a non-immigrant student. In 2010, the Department of Homeland Security ("DHS") issued a Notice to Appear and initiated a removal proceeding based on Nimaga's failure to carry a full course of study from 2002 to 2010. Through his counsel, Nimaga admitted the factual allegations set forth in the Notice and conceded his removability as charged. After several adjournments and continuances in the proceeding, an individual hearing was scheduled for October 1, 2019, at 3 p.m. in Chicago.

Meanwhile, on November 8, 2016, while Nimaga's case was pending before the Immigration Court, his citizen spouse had been arrested for domestic violence after she struck Nimaga over the head with a large stack of paper and attempted to stab him with a kitchen knife. She eventually pleaded guilty to criminal recklessness and was ordered to serve one year in jail, with all but four days of that term suspended, and one year of probation. The couple ultimately divorced in 2018. In 2017, Nimaga applied for a U visa and filed an EOIR-42B application for cancellation of removal and adjustment of status to that of a legal permanent resident as a victim of domestic violence, pursuant to section 40703 of the Violence Against Women Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 1955 (Sept. 13, 1994), and its legislative successors. *See* 8 U.S.C. §§ 1101(a)(15)(U), 1154(a)(1), 1229b, 1255(a); 8 C.F.R. §§ 204.2(c)(1)(vi), 214.14(a)(10).

In June 2019, Nimaga's attorney sought to withdraw as his counsel based on a breakdown in communication and Nimaga's failure to pay his attorney's fees. The Immigration Court granted that motion on June 17, 2019.

Nimaga made plans to attend the October 1, 2019, hearing. The hearing was in Chicago, and Nimaga lived in Indianapolis, a three-plus hour drive away. He did not have a car, but he made arrangements with a friend, Brice Bassa: Bassa was to borrow his girlfriend's car and give Nimaga a ride to Chicago. (Bassa had his own vehicle, but it was unreliable.) As a backup, Nimaga planned to take a Greyhound bus to Chicago if the ride with Bassa fell through.

In August 2019, Nimaga was working at the Indiana State Fair. With his work authorization due to expire on August 30, he worked his last day at the Fair on August 27. He took home with him the $2,200 in cash he was paid by the Fair, and later that night someone broke into his apartment and stole all of his money. He reported the burglary to the Indianapolis police, who provided him with an information card reflecting the report. As a practical matter, he could not find a job with only a few days left on his work authorization. Left virtually penniless as a result of the burglary, Nimaga was unable to pay his rent, pay for a phone, or support himself. By the end of September, he says, he was not getting enough to eat.

In late September, Nimaga sought pro bono legal assistance from the Neighborhood Christian Legal Clinic in Indianapolis, but the clinic told him they could not help him with his immigration case. They did caution him how important it was for him not to miss the hearing scheduled for October 1, lest he be summarily ordered removed. Nimaga did not attempt to contact any of the attorneys who had represented

him previously, nor did he make contact with the Immigration Court.

When October 1 arrived, Nimaga's friend Bassa failed to borrow a car to take him to his immigration hearing in Chicago despite multiple prior assurances he would do so. Nimaga had no funds with which to buy a bus ticket. He borrowed a phone from his neighbor and sought a ride from everyone he knew, including his ex-wife. His neighbor herself tried to arrange a ride for him. No one responded to their pleas. Nimaga avers that he called the 1-800 number on his hearing notice, but encountered a menu with many options, and his neighbor allegedly took the phone from him before he could get through to anyone. (His neighbor's written statement does not confirm that she took the phone from him before he could reach the Immigration Court.) Nimaga was unable to make it to Chicago, and the Immigration Judge ordered Nimaga removed in absentia. Interestingly, although Nimaga's retained attorney had been released from representing him, the attorney was present at the hearing.

Nimaga filed a motion to reopen the proceeding and to rescind the removal order, setting forth the events described above. In an order dated February 18, 2020, the Immigration Judge denied the motion, finding that he had not met his burden of showing that "exceptional circumstances" caused him to miss his October 1 hearing. *See* 8 U.S.C. § 1229a(b)(5)(C)(i). The court noted among other things that Nimaga had not proffered sufficient evidence to support his claim that he reported the August 27 burglary to the police and he failed to explain why, in the 35 days between the burglary and the October 1 hearing, he did not notify the Immigration Court of

his situation either by phone or in writing and explain why it prevented him from attending the hearing.

On September 24, 2020, the BIA dismissed Nimaga's appeal of the denial of his motion to reopen. The Board agreed that Nimaga had failed to establish "exceptional circumstances" that prevented his appearance at the October 1 hearing. The Board reasoned in part that because Nimaga was already experiencing financial difficulties and had already made arrangements with his friend Bassa to drive him to Chicago *before* the burglary occurred, the chain of events following the burglary (which Nimaga criticized the Immigration Judge for ignoring) did not cause him to miss the hearing.

## II.

We review the denial of Nimaga's motion to reopen the proceedings and rescind the order of removal for abuse of discretion. *Nazarova v. I.N.S.*, 171 F.3d 478, 482 (7th Cir. 1999); *see* 8 C.F.R. § 1003.2(a) ("[t]he decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board …"). The Board's decision constitutes an abuse of discretion if it is arbitrary, irrational, or contrary to law. *Fessehaye v. Gonzales*, 414 F.3d 746, 752 n.5 (7th Cir. 2005) (citing *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004)).

Where, as in this case, the petitioner received proper notice of the hearing he failed to attend and the petitioner was otherwise removable, an in absentia removal order may be rescinded only if the petitioner files a motion to reopen with the Immigration Judge within the 180-day period after the order is entered and the motion shows that his failure to appear was due to "exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i); 8 C.F.R. § 1003.23(b)(4)(iii)(A)(1). There is

no dispute that Nimaga filed a timely motion to reopen; the dispute in this appeal centers on whether his motion demonstrated that his absence was due to exceptional circumstances.

"Exceptional circumstances" are defined as "exceptional circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien. 8 U.S.C. § 1229a(e)(1). The petitioner thus bears the burden of making three key showings: (1) that circumstances beyond his control; (2) caused his absence from the hearing; (3) and that these circumstances were exceptional, i.e., they were as compelling as battery or extreme cruelty to himself, his child, or parent; serious illness of the petitioner; or the serious illness or death of a spouse, child, or parent of the petitioner. The agency looks to the entirety of the circumstances confronting the petitioner in deciding whether they satisfy these criteria. *Matter of W-F-*, 21 I. & N. Dec. 503, 509 (B.I.A. 1996); *see Uriostegui v. Gonzales*, 415 F.3d 660, 664 (7th Cir. 2005); *Montejo-Gonzalez v. Bondi*, 166 F.4th 851, 855 (9th Cir. 2026) (en banc) (collecting cases). Among other factors, the agency will consider the petitioner's supporting documentation, his efforts to contact the Immigration Court, and his promptness in seeking relief from the order of removal. *In re B-A-S*, 22 I. & N. Dec. 57, 59 (B.I.A. 1998). The exceptional-circumstances standard is a demanding one; relief is reserved for the rare case. *Kaweesa v. Gonzales*, 450 F.3d 62, 68 (1st Cir. 2006) (citing *Georcely v. Ashcroft*, 375 F.3d 45, 50 (1st Cir. 2004), and *Herbert v. Ashcroft*, 325 F.3d 68, 72 (1st Cir. 2003)).

Courts have concluded that a variety of obstacles to a petitioner's attendance do not qualify as exceptional, including experiencing car trouble, encountering unexpected (but foreseeable) traffic and parking difficulties, general claims of illness, and misunderstandings about the date of the court hearing. *See Kasyupa v. Keisler*, 252 F. App'x 106, 108 (8th Cir. 2007) (non-precedential decision) (lack of notice of hearing due to petitioner's failure to update address with counsel, the Immigration Court, or DHS); *Uriostegui*, 415 F.3d at 663–64 (immigrant misheard date of next hearing when announced by court); *Ursachi v. I.N.S.*, 296 F.3d 592, 594 (7th Cir. 2002) (illness, supported by physician's note, characterized by flu symptoms and dizziness that resulted in immigrant staying home for several days on physician's advice); *Magdaleno de Morales v. I.N.S.*, 116 F.3d 145, 148–49(5th Cir. 1997) (automobile breakdown one hour prior to hearing, after which immigrants had a relative take them home where, beyond cursory, unsuccessful search for court phone number, they made no effort to contact court before receiving notice of in absentia order of deportation more than two weeks later); *Sharma v. I.N.S.*, 89 F.3d 545, 547–48 (9th Cir. 1996) (traffic and parking difficulties causing petitioners to be 45 minutes to one hour late to hearing); *Thomas v. I.N.S.*, 976 F.2d 786, 790 (1st Cir. 1992) (per curiam) (2-1 decision) (petitioner and his attorney had "crossed signals" about where they were to meet, causing them to be 30 minutes late to hearing).[1]

---

[1] *But see also Montejo-Gonzalez*, 166 F.4th at 855–58 (where two traffic accidents had resulted in extraordinary multi-hour traffic delay causing petitioners to be late for hearing, Immigration Judge and Board erred in applying per se rule that traffic delays can never amount to exceptional circumstances, rather than examining the totality of the circumstances).

By contrast, in *Nazarova*, 171 F.3d 478 (2-1 decision), it was the agency itself which was responsible, at least in part, for the petitioner's late arrival at a scheduled hearing. The agency had given the Russian-speaking immigrant, Nazarova, mixed signals as to whether it would provide her with an interpreter so that she could comprehend what was happening in her removal proceeding: The agency had assured the employer who telephoned the agency on Nazarova's behalf that the Immigration Court would provide her with an interpreter, but when Nazarova thereafter attended a master calendar hearing, no interpreter was present and Nazarova could understand little to nothing of what transpired. Nazarova therefore engaged an interpreter on her own for the subsequent merits hearing, and it was the interpreter's tardiness that caused Nazarova to be two hours late for that hearing, resulting in an in absentia order of deportation. The Immigration Judge, seconded by the Board of Immigration Appeals, denied her quickly-filed motion to reopen, reasoning that Nazarova's absence was not the result of exceptional circumstances. We disagreed:

> The entire unfortunate chain of events leading to Nazarova's tardiness at her second hearing began with the INS's confusing and contradictory actions with respect to the interpreter question. When it failed to produce one at Nazarova's first hearing, she reasonably believed that the advice her employer had received over the telephone was in error and that she needed to find her own interpreter. Whether or not the INS gave consistent or accurate advice on this crucial aspect of the hearing was certainly a matter beyond Nazarova's control, and it made

all the difference to the quality of the process she received.

* * *

When her interpreter failed to appear on time, Nazarova faced a serious problem to which there was simply no good solution. On the one hand, she could appear alone at the merits hearing. Given the erroneous information she had received that an interpreter would be present at the scheduling hearing, and her resulting experience of that hearing as incomprehensible gibberish, she held the very reasonable belief that her physical presence alone would do nothing to secure an opportunity to participate meaningfully in the proceeding. Alternatively, she could wait for her interpreter and hope that she would still be allowed the opportunity to state her case even if she arrived late. Although the latter was surely the better of the two choices from her perspective, the IJ and the BIA have formalistically demanded that Nazarova suffer the consequences of her failure to appear. … Nazarova promptly notified the IJ of the reason why she was late in a handwritten motion to reopen dated … the very same day, … only minutes after she found out what had happened. We cannot endorse the approach of the IJ and the BIA to this case. … .

*Id.* at 484–85; *see also E.A.C.A. v. Rosen*, 985 F.3d 499, 504–06 (6th Cir. 2021) (unrepresented 13 year-old immigrant's young age and mother's recent childbirth prevented immigrant from

navigating immigration process to change location of hearing or from securing transportation from New York to Memphis in order to attend hearing); *Singh v. Gonzales*, 244 F. App'x 99, 100 (9th Cir. 2007) (non-precedential decision) (immigrant's painful back condition, reported to Immigration Court by counsel on day of scheduled hearing and substantiated by testimony of immigrant's chiropractor on same day, prevented immigrant from walking upright and enduring two-hour drive to site of hearing); *Romani v. I.N.S.*, 146 F.3d 737, 739 (9th Cir. 1998) (immigrants were present at courthouse on time but failed to appear before Immigration Judge due to erroneous advice of their absent counsel's assistant).

To sum up: Obstacles to a petitioner's timely attendance at a hearing that are foreseeable (encountering traffic delays or parking difficulties), mundane (non-severe illness) or in some way attributable to the petitioner himself (misunderstandings about the hearing date or time) will likely not qualify as exceptional circumstances, whereas obstacles that were truly unexpected and beyond the control of the petitioner (*Nazarova*) may so qualify.

Looking to the totality of the circumstances that confronted Nimaga, reasonable minds might differ as to whether these circumstances were exceptional in the sense that they rendered him unable to appear before the Immigration Court. This is particularly so when one takes into consideration the possibility of Nimaga contacting the court in advance of the hearing—if not in the 35-day period between the August 27 burglary and the October 1 court date, then certainly on the day of the hearing itself—to apprise the court of the difficulty he would have in showing up in person for the October 1 hearing.

Prior to October 1, Nimaga had Bassa's assurance that Bassa would borrow a car and drive him to Chicago, but on the morning of the October 1 court hearing, Nimaga learned that the ride had fallen through. At that juncture, Nimaga was essentially in the same position as an immigrant whose car has broken down or who has encountered traffic delays or parking difficulties—events that may be considered beyond an individual's control but which courts typically find not to constitute exceptional circumstances.[2] What remained within Nimaga's ability and control was the option to contact the Immigration Court to advise the court that he would be unable to make it to Chicago for the hearing. In the hours prior to the 3 p.m. hearing, he could have contacted the court directly, or he might have contacted his former counsel and asked him to contact the court. (Recall that this attorney came to the October 1 hearing notwithstanding the fact that the court had released him from representing Nimaga.) As the Board has observed, "Notifying the Immigration Court of the respondent's unavailability is a minimal and logical step that, if not taken, is a factor which tends to undermine a claim of exceptional circumstances." *B–A–S–*, 22 I. & N. Dec. at 59; *see Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1341 (11th Cir. 2003) (per curiam) ("Lonyem did not indicate that he made any effort to contact the Immigration Court on the day of his removal hearing to alert the IJ of his absence and to explain the reason for it."); *Magdeleno de Morales*, 116 F.3d at 149. The Board has a point: If a petitioner knows ahead of time that he will not, or

---

[2] Although unexpected, Bassa's failure to borrow his girlfriend's car in order to give Nimaga a ride was not unforeseeable to Nimaga: By his own account, he had planned prior to the burglary to purchase a bus ticket to Chicago in the event the ride fell through.

likely will not, be able to attend a scheduled hearing, he has both the opportunity and the obligation to contact the Immigration Court so that the hearing can either be rescheduled or conducted by video and the time and resources of the court, the parties, and their attorneys is not wasted. *See Islam v. Gonzales*, 214 F. App'x 29, 31 (2d Cir. 2007); *Lonyem*, 352 F.3d at 1341; *Celis-Castellano v. Ashcroft*, 298 F.3d 888, 890, 892 (9th Cir. 2002); *Magdaleno de Morales*, 116 F.3d at 149.

And this was essentially the Immigration Judge's point here: Nimaga had ample opportunity to notify the court of his predicament in advance of the hearing rather than simply not show up. One can appreciate Nimaga's efforts on the morning of the hearing to seek a ride from someone else in a last-ditch effort to attend, yet still conclude that his first priority should have been to contact the Immigration Court to advise it of his lack of transportation, particularly when he was on notice that he was at risk of being ordered removed in absentia if he did not appear in court.

This was not a scenario in which the immigrant (or a close family member) was injured or fell seriously ill just prior to a scheduled hearing and the immigrant was both unable to attend the hearing and to provide advance notice to the court of his situation. Nimaga had already conceded his removability, and his case remained before the Immigration Court pending his efforts to obtain a U visa and adjust his status. He was on notice that he was at risk of summary removal in the event he failed to appear at the October 1 hearing. And he knew, in time to notify the Immigration Court, of the obstacle to his attendance. His financial circumstances were dire as a result of the burglary, but they did not deprive him of the means to notify the court, as his efforts with the borrowed phone to

seek alternate transportation on the morning of the hearing confirm.

We do not doubt that the Immigration Judge (and the Board) could have seen things differently and concluded that the circumstances Nimaga has described—which we have accepted as true for purposes of his petition for review—were exceptional. The theft of Nimaga's savings in August was both beyond his control and financially devastating. Nimaga was already dependent on his friend to borrow a car in order to make the multi-hour drive to Chicago for the hearing, and the burglary eliminated his backup plan to buy a bus ticket. For a person with limited financial means and without a robust support network of family and friends, an unexpected event like a burglary or a ride falling through at the eleventh hour can pose insurmountable obstacles to getting himself to an out-of-town hearing on time.

But given that Nimaga did have the means to contact the Immigration Court on the day of the hearing to report his predicament and failed to do so, we cannot say that it was an abuse of discretion for the Immigration Judge and the Board to find that the difficulties confronting Nimaga were not exceptional.

### III.

Because the Board did not abuse its discretion in denying Nimaga's motion to reopen based on extraordinary circumstances, we DENY the petition for review. The parties shall file supplemental memoranda regarding the status of Nimaga's efforts to obtain a U visa, and what steps, if any, this court and/or the Board should take in view of those efforts, on or before May 29, 2026. This court will postpone issuance of

the mandate pending its review of those submissions and until further order of the court.